**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| GEORGETTE GLADSTONE, ANDREW GLADSTONE, KAREN SANCHEZ, and TERESA MUGA, on behalf of themselves and all others similarly situated<br>c/o Spangenberg Shibley & Liber LLP<br>1001 Lakeside Avenue East, Suite 1700<br>Cleveland, OH 44114 | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| Plaintiffs | |
| v. | |
| EVENFLO COMPANY, INC.<br>c/o CT Corporation System, Statutory Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | |
| Defendant | |

Georgette and Andrew Gladstone, Karen Sanchez, and Teresa Muga, by and through the undersigned counsel, bring this class action on behalf of themselves and all those similarly situated based on their personal knowledge, the investigation of counsel, and on information and belief.

## I.    Introduction

1.    This class action is a direct consequence of Evenflo Company, Incorporated's "pioneering" efforts in child seat safety testing.  Starting in 2008, Evenflo advertised its Big Kid booster seat to parents with the claim that the Big Kid was tested for side impact crashes. Evenflo could make that claim only by exploiting a regulatory oversight.  Because there was no testing standard for side-impact crashes booster seats, only a standard for frontal impacts, Evenflo instituted its own superficial testing regime.

2.      Evenflo's testing protocol was not concerned with the safety of the children that would be using the Big Kid, but with the marketability of such crash testing.  Evenflo therefore designed the side-impact test in a way that it was practically impossible for the Big Kid to fail. In fact, failure was possible only "if a child-sized dummy end[ed] up on the floor or the booster seat itself [broke] into pieces."[1]  As a former Evenflo engineer admitted under oath in 2016: "We side-impact test our seats . . . but I don't think we say that we offer any type of side-impact protection."

3.      In reality, Evenflo's tests demonstrated at least as early as February 2012 that during a side-impact crash the shoulder belt would often slip off the occupant entirely. The child's head, torso, and limbs would project with the force of the crash. In real world crashes, children who experienced such violent, unrestrained force could have suffered broken bones, traumatic brain injuries, or even internal decapitation.

4.      Evenflo marketed and sold the Big Kid by intentionally exploiting one of the most fundamental aspects of human life—a mother's love for her child.  Evenflo knew that mothers frequently made the purchasing decisions for car seats, and that they performed little of their own research.  Therefore, Evenflo advertised the Big Kid's alleged crash testing on the Evenflo website, on its retailers' websites, and on the Big Kid's packaging.  The Big Kid's upholstery even contained a stitched tab declaring "Side Impact Tested."  Evenflo's website stated that its car seats—including the Big Kid—were tested at "2X the Federal Crash Test Standard" and were side-impact tested in a way that "[m]eets or exceeds all applicable federal safety standards and Evenflo's Side impact standards."[2]  These statements were not just the usual marketing puffery. They were, and continue to be, meaningless apropos side-impact testing, because there is no applicable federal standard to meet in the first place.

---

[1] Daniela Porat and Patricia Callahan, *Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety*, ProPublica (Feb. 6, 2020, 5:00am EST), accessible at https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety.

[2] Evenflo, "Safety Technology," https://www.evenflo.com/safety-learning/safety-tech.html (last accessed March 3, 2020).

5.     To add even more to the safety illusion, Evenflo added upholstered "wings" around an occupant's head that provided no safety improvements at all.  Instead, Evenflo added the wings because they helped customers perceive the Big Kid as more safe.

6.     In addition to its deceptive safety marketing, Evenflo manipulated parents in order to expand the market for the Big Kid.  Evenflo did this by exploiting facts to which every parent can attest—car seats are cumbersome to use, and they take space away from other occupants in most vehicles.  So, despite knowing that the American Academy of Pediatrics had recommended that children under 40 pounds should use car seats that had an internal harness, Evenflo marketed the Big Kid—a should-belt seat—as being appropriate for children as small as 30 pounds.

7.     Lighter children have less mass with which to fit in a booster seat, meaning the seat belt often cannot properly secure the child in the Big Kid.  But both parents and children are often excited to graduate to a bigger car seat, and in that enthusiasm Evenflo saw an opportunity.

8.     Evenflo's deceptive marketing was essential to its ability to compete with its main rivals Graco and Dorel.  So essential, in fact, that when Evenflo's own engineers raised concerns about the Big Kid's safety and recommended raising the Big Kid's minimum weight limit to 40 pounds, a marketing executive shut them down.

9.     Evenflo has sold more than 18 million Big Kids since 2008,[3] meaning millions of children are exposed to unnecessary danger.  Parents would never have bought the Big Kid had they known that the Big Kid's safety benefits were fictitious.

10.     Plaintiffs bring this proposed class action for damages, injunctive, and equitable relief on behalf of themselves and all other persons in Illinois, New Jersey, and New York who purchased an Evenflo Big Kid booster seat.  Plaintiffs sue for violations of the consumer protection statutes of those States.

---

[3] For purposes of this Complaint, the "Class Period" is 2008 to the present.

## II. Parties

11. Plaintiff Georgette and Andrew Gladstone are Illinois citizens residing in Forest Park, Illinois. During the Class Period, the Gladstones purchased a Big Kid booster seat in Illinois. The Gladstones recall reviewing information stating that the Big Kid booster seat was designed to keep children between 30 and 110 pounds safe in a side impact crash, that the seat exceeded NHTSA recommendations, that it was rigorously tested, and that the boost in height decreased the risk of injury. Had the Gladstones known about the defective nature of Evenflo's Big Kid booster seats, they would not have purchased it and instead would have purchased one of many safer available alternatives.

12. Plaintiff Karen Sanchez is a New Jersey citizen residing in Cape May, New Jersey. During the Class Period, Plaintiff Sanchez purchased a Big Kid booster seat in New Jersey. Plaintiff Sanchez recalls reviewing information stating that the Big Kid booster seat was designed to keep children between 30 and 110 pounds safe in a side impact crash, that the seat exceeded NHTSA recommendations, that it was rigorously tested, and that the boost in height decreased the risk of injury. Had Plaintiff Sanchez known about the defective nature of Evenflo's Big Kid booster seats, she would not have purchased it and instead would have purchased one of many safer available alternatives.

13. Plaintiff Teresa Muga is a New York citizen residing in Oakland Gardens, New York. During the Class Period, Plaintiff Muga purchased two Big Kid booster seats on Amazon.com for delivery to her home in New York. Plaintiff Muga recalls reviewing information stating that the Big Kid booster seat was designed to keep children between 30 and 110 pounds safe in a side impact crash, that the seat exceeded NHTSA recommendations, that it was rigorously tested, and that the boost in height decreased the risk of injury. Had Plaintiff Muga known about the defective nature of Evenflo's Big Kid booster seats, she would not have purchased them and instead would have purchased one of many safer available alternatives.

14.     Defendant Evenflo Company, Incorporated is an Ohio corporation that is wholly owned by Goodbaby International Holdings Limited.  According to Evenflo's pleadings filed before the Judicial Panel on Multidistrict Litigation, Evenflo considers Ohio to be its principal place of business.  Evenflo began its activities in Ohio one hundred years ago and has continuously maintained a substantial business presence in the Dayton, Ohio area.  Evenflo maintains its operational office in Miamisburg, Ohio, and it has a manufacturing plant in Piqua, Ohio, employing nearly 400 workers (both near Dayton).  Evenflo relocated approximately 70 of its employees, including several executives, from Miamisburg, Ohio to Massachusetts in 2018 to consolidate some executive responsibilities and sales functions in one location and another group of engineers to the Charlotte, North Carolina area.  Most of Evenflo's approximately 800 employees, however, continue to work in Ohio.  Evenflo manufactures Big Kid booster seats in Ohio.  Evenflo's manufacturing, operations, car seat testing, legal, and financial functions all remain near Dayton.  Evenflo has manufactured Big Kid booster seats at its plant in Piqua, Ohio for several years.  All side impact testing and much frontal impact testing has occurred at the Piqua plant.  The engineering, regulatory, and manufacturing personnel most familiar with the allegations in this Complaint are in Ohio.

15.     In this Complaint, when reference is made to conduct by Evenflo, the allegation means that Evenflo engaged in the conduct by or through its officers, directors, agents, employees, or representatives who were actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Evenflo.

**III.    Jurisdiction and Venue**

16.     This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest, and because this is a class action in which the members of the various classes and Defendant are citizens of different states.

17.     Venue is proper in this judicial district under 28 U.S.C. § 1391(c)(2) because Defendant is a resident of Miamisburg, Ohio, and is subject to this Court's personal jurisdiction.

## IV.     Factual Allegations

### a.     The market for children's car seats

18.     Children's car safety seats are generally grouped around three basic designs that follow a child's growing height and weight: rear-facing seats, forward-facing seats with harnesses, and belt-positioning booster seats.

19.     The American Academy of Pediatrics' ("AAP") best practices for optimizing passenger safety provide that:

- Infants and toddlers should ride in a rear-facing car safety seat as long as possible, until they reach the highest weight or height allowed by their seat. Most convertible seats have limits that will allow children to ride rear-facing for 2 years or more.

- Once they are facing forward, children should use a forward-facing car safety seat with a harness for as long as possible, until they reach the height and weight limits for their seats. Many seats can accommodate children up to 65 pounds or more.

- When children exceed these limits, they should use a belt-positioning booster seat until the vehicle's lap and shoulder seat belt fits properly. This is often when they have reached at least 4 feet 9 inches in height and are 8 to 12 years old.[4]

20.     The AAP has long explained that parents should not move children from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat. Since the early 2000s, the AAP has explained that car seats with an internal harness provide the best protection for children who weigh 40 pounds or less. Today, almost all harnessed seats can accommodate children up to 65 pounds and as tall as 4 feet, 1 inch. Some internal harnessed car seats can fit children up to 85 pounds.

---

[4] https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/AAP-Updates-Recommendations-on-Car-Seats-for-Children.aspx

21. Since 2011, the AAP has recommended that children remain in harnessed seats "as long as possible," at least until they weigh 65 pounds, and in some cases 85 pounds.

22. Scientific consensus confirms that booster seats fail to protect toddlers adequately. An adult seat belt must remain across the middle of the occupant's shoulder and thighs to obtain the full safety benefit in a crash. Even if young children are tall enough for a belt to reach their shoulders, they tend to slide out of position, losing safety protection.

23. By contrast, a tightly adjusted five-point harness goes between the child's legs and secures her shoulders and hips. By securing a child's body, a five-point harness disperses the force of a crash over a wider area and makes it less likely for the child to be ejected in a crash. The following video still images from comparison tests of the Evenflo "SecureKid"—an internal harness seat that can accommodate a child up to 65 pounds—and the Evenflo Big Kid illustrate this difference:





24. The above-illustrated crash tests show that the head and torso of the dummy in the SecureKid remained entirely within the seat's confines, while the seat belt slipped off the shoulder of the dummy in the Big Kid, and the dummy's head and torso flailed far outside the seat.

25.     Nevertheless, Evenflo determined that the Big Kid "passed" its side-impact testing.  Moreover, Evenflo's director of manufacturing engineering has admitted that the Big Kid placed the dummy's neck in severe extension; as a result, the occupant of the Big Kid was more at risk for injurious head contact.

26.     Data is consistent with these images:  child restraints, when used properly, are associated with a 28% reduction in risk of death, compared to seat belts, even adjusting for seating position, vehicle type, model year, driver and passenger ages, and driver survival status.[5]

### b. Development, testing, and marketing of the Big Kid booster seat

27.     When Evenflo introduced the Big Kid booster seat in the early 2000s, its goal was to "regain[] control in the market" for booster seats from its main competitor, Graco, which had recently released its popular "TurboBooster" model.

28.     When developing the Big Kid, Evenflo's team proposed creating a booster seat with similar features to the TurboBooster, but priced to sell for about $10 less, or $40–$50.  Although some car seats sell for much more money, Evenflo intended to, and did, develop a booster seat that would have substantial sales at large retailers such as Walmart, Target, Costco, Babies R Us, and Amazon.  Within a few years, Evenflo's internal design review considered the Big Kid to be "the reliable workhouse in the Evenflo platform stable."

29.     Nonetheless, Graco continued to outsell Evenflo.  In 2008, Evenflo launched a new Big Kid booster seat, one with curved extensions on both sides of the headrest which it referred to as "side wings."  Evenflo's Big Kid and TurboBooster with side wings are shown below:

---

[5] *See* Michael R. Elliott et al., Effectiveness of child safety seats vs seat belts in reducing risk for death in children in passenger vehicle crashes, 160(6) ARCH PEDIATR. ADOLESC. MED. 617–621 (2006), available at https://www.ncbi.nlm.nih.gov/pubmed/16754824.



30.     Adding side wings was a ploy to boost sales.  Evenflo's engineers believed that the Big Kid had a diminished "on-shelf perception" as compared to Graco's competing model. Because Graco's seat appeared to have more side support, Evenflo needed to upgrade the look of the Big Kid in order to stay competitive.  Evenflo's own documents state that one purpose of the new side wings was "increased perceived side protection" among consumers.  But Evenflo's side-impact testing demonstrated no difference in safety between the two models:



### i. Evenflo designed a fraudulent test to improve its marketing of the Big Kid

31.     Evenflo began to conduct side-impact "tests" of the new Big Kid before its release in 2008 in order to enhance the perceived safety of the booster seat.  Because there were no federal standards, Evenflo was able to, and did, develop its own test.  Evenflo ensured that the Big Kid "passed" that test and then used that test in its marketing to distinguish the Big Kid from competitive products.

32.     Evenflo represented publicly that its side-impact testing is "rigorous" and akin to "government" tests.  For example, according to a blog post authored by Sarah Haverstick, a "Safety Advocate" and "Child Passenger Safety Technician" at Evenflo, "the engineers at Evenflo have designed the Evenflo Side Impact Test protocol" as a "rigorous test [that] simulates the government side impact tests conducted for automobiles:"

## Making the Transition – How to Choose a Booster Seat



There are so many booster seat options on the market it can be hard to know where to start when shopping for this important piece of safety equipment. Here are some tips to make the experience a little easier.

**First - don't transition your child too early.** At a minimum, your child should be 4 years old to use a booster seat. Your child must be mature enough to sit in the booster seat with the seat belt in the proper position – without putting it under their arm, behind their back or slouching.

**Next – make sure your child actually fits in the booster.** Belt positioning booster seats are all about proper seat belt fit. Booster seats are designed to make your child a little taller so they can use the lap/shoulder seat belt, which is made to fit an adult. The lap belt should be low and snug across the hips (not across the belly) and the shoulder belt should cross the chest and shoulder (not the neck and face). Every booster seat fits in every vehicle differently, so ideally, ask the store if you can bring it out to your car to test for fit with your child.

Once you have proper belt fit – there are many other features you can look for:

**Extended Use**
Combination car seats are forward-facing only car seats that allow you to use a harness for your child and then remove the harness to use the seat as a booster. Upper weight limits on the harness will vary. Using a car seat with a higher weight rating for the harness (over 40 pounds) will help delay your child's transition into a booster seat.

**High Back Booster vs. No Back Booster**
You will need a high back booster if your vehicle does not have a headrest for the seating position that your child will be using (fairly uncommon with most newer vehicles, but more common in older vehicles or pickup trucks). Otherwise, high back boosters are a great option when first transitioning a child to a booster, and are also helpful if your child is prone to napping in the car. No back boosters are great options for travel, or to have on hand in case you frequently car pool with other booster-age kids, since they are compact and easy to store.

**Lower Anchors**
Combination seats will often allow the use of the lower anchors and tether when the seat is used in booster mode. When used with a booster, lower anchors are not designed to help with crash safety for the child (the seat belt protects the child in a crash – which is why it is important that it fits right). However, the lower anchors do keep the booster seat in the same place. This is helpful when your independent child wants to climb in and buckle the seat belt on their own. The lower anchors are also helpful in keeping the booster seat tied down when not in use so it does not become a projectile in a crash. That way you do not need to remember to buckle the seat in every time it is not in use.

**Side Impact Testing**
Currently, there is no federal standard for side impact testing of car seats and booster seats. However, the engineers at Evenflo have designed the Evenflo Side Impact Test protocol. This rigorous test simulates the government side impact tests conducted for automobiles.

**Cool factor!**
This might not sound as important – but as safety advocates, we know that booster seats have been proven to be more effective than seat belts alone for kids ages 4 through 8. But, we also know that older kids do not want to look (or feel) like babies in the car. To encourage kids to be excited about using boosters, Evenflo has added fun colors, cup holders and even lights and speakers in some booster seat models. If possible, bring your child with you when you are shopping for their new seat. Allowing them to help with the decision may make them more interested in using the seat.

33.     This claim is misleading.  Evenflo's performed its side-impact test by placing a product on a bench that resembles a car seat, moving that bench at 20 miles per hour, then suddenly decelerating it.

34.     In contrast, the National Highway Traffic Safety Administration's ("NHTSA") 5-Star Safety Ratings program evaluates vehicles based on their performance during two types of side-impact crashes.[6]  The first test is designed to simulate a collision at an intersection.  In that test, a 3,015-pound moving barrier is crashed at 38.5 miles per hour into a standing vehicle containing an average-size adult male in the driver's seat and a small-size adult female in the rear driver's side passenger seat.  The second test is designed to simulate a crash into a telephone pole.  In that test, a vehicle angled at 75 degrees containing the same two dummies is pulled sideways at 20 miles per hour into a 25 cm diameter pole at the location of the driver's seat.  Injuries to the dummies' heads, chest, lower spine, abdomen, and pelvis are evaluated after the simulated crashes.

35.     Neither Evenflo's marketing materials nor its website explain the difference between Evenflo's safety "tests" and NHTSA's 5-Star Safety Ratings tests.  Instead, the section of Evenflo's website concerning "Safety Technology" states:

> [A]t Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard.  We also continually enhance our products with new technologies that distribute crash forces away from your child during a crash.  Some of those technologies include ...
>
> • Side Impact Tested:  Meets or exceeds all applicable federal safety standards and Evenflo's Side [sic] impact standards.[7]

36.     The same page describes Evenflo's side-impact testing as follows:

---

[6] NHTSA describes its rating system on its website on its website. *See* https://www.nhtsa.gov/ ratings.

[7] Evenflo, "Safety Technology," https://www.evenflo.com/safety-learning/safety-tech.html (last accessed Mar. 19, 2020).

**Evenflo Side Impact Testing**

Evenflo Side impact testing simulates a crash in which the vehicle carrying the car seat is struck on the side by another vehicle. An example of a real life side impact collision is when a car crossing an intersection is struck on the side by another car that ran a stop sign.

**Why is it important to car seat safety?**

Approximately one out of four vehicle crashes have a side impact component. According to the National Highway Traffic Safety Administration (NHTSA), impacts to the side of the vehicle rank almost equal to frontal crashes as a source of fatalities and serious injuries to children ages 0 to 12.

**How are car seats tested now?**

Federal car seat safety standards require a frontal impact test with a 30 mph velocity change. This approximates the crash forces generated in a collision between a vehicle traveling 60 mph and a parked car of similar mass, or the energy produced in a fall from a three story building. There are currently no provisions in the U.S. and Canadian standards for side impact testing. NHTSA is in the process of developing a child side impact test standard.

**What is the Evenflo Side Impact Testing?**

At Evenflo, car seat safety is a top priority. That's why we have created the Evenflo Side Impact test protocol. The Evenflo Side Impact test protocol was developed by Evenflo engineers using state-of-the-art facilities. The rigorous test simulates the energy in the severe 5-star government side impact tests conducted for automobiles.

All Evenflo car seats meet or exceed all applicable federal safety standards and Evenflo's side impact standards.

For car seat safety that you can depend on, trust Evenflo. Shop our collection of side impact tested car seats today.

37.     Evenflo's side-impact test is not only less rigorous than the NHTSA's test; it is virtually impossible to fail.

38.     According to records of Evenflo's internal side-impact tests of various models, after each test an Evenflo technician would check "yes" or "no" on a form to indicate whether the test showed "dummy retention," and then send the report to an engineer.  The engineer then would decide whether the Big Kid model passed or failed.

39.     An Evenflo senior test technician has explained that, for purposes of these forms, "dummy retention" means: "did [the dummy] stay in the seat or did it fall out of the seat and end up on the floor?"

40.     As a result, the only ways to fail Evenflo's "rigorous" side-impact test are either if a child-sized dummy escapes its restraint entirely and ends up on the floor, or the booster seat breaks into pieces.

41.     The same technician has acknowledged that he never performed a side-impact test on a booster seat that "failed" in 13 years.  He also admitted that each of the following images from "passed" Evenflo side-impact tests using a dummy based on a three-year-old child, would have been marked "yes":

13

 

 

42.     These images depict the seat belt slipping off the dummy's shoulders and tightening around its abdomen and ribs. Violent movement of this type at high speed can cause serious damage to a child's internal organs, head, neck and spine, including paralysis or death.

43.     Evenflo knew of these risks. An Evenflo safety engineer testified under oath that reach children are at risk for injurious head contact when they move in this way.

44.     Thus, Evenflo's proprietary side-impact tests, which its own engineers consider successful, demonstrate that Big Kid booster seats place many children at risk of serious injury or death.

### ii. Evenflo markets the Big Kid as "side impact tested" and safe for children under 40 pounds, despite evidence to the contrary.

45. After conducting pre-release safety tests and learning that the Big Kid booster seats place many children at serious risk in side-impact collisions, Evenflo could have redesigned the product. Alternatively, Evenflo could have conducted additional testing to determine the minimum age and weight age at which a child could safely use a Big Kid booster seat, specifically the age and weight at which the seatbelt no longer slips from a child's shoulders in a side-impact collision. Had Evenflo conducted these tests, it could have changed its packaging and marketing accordingly. Instead, Evenflo kept these tests secret.

46. In addition, beginning in 2008, Evenflo started to aggressively market the Big Kid as "side-impact tested" to both businesses and consumers. Evenflo sent marketing materials to Walmart, Target, and Babies R Us emphasizing in large bold letters that the Big Kid was "side impact tested." Other marketing materials stated: "Knowing that one in four automobile accidents are side impact collisions, we believe it's important to go beyond the current government standards when designing the next generation of Evenflo car seats, including the Big Kid LX."

47. Evenflo's marketing to consumers was, and continues to be, aggressive. Evenflo prominently advertises its Big Kid models as "side impact tested" in the following website screen shots, including Evenflo's own website:



48.     Amazon's Big Kid page:

**Product description**

Color:Denver

**Product Description**

The Evenflo big kid AMP belt-positioning booster car seat gets your child excited about sitting in a booster seat. With 6 height positions, the back adjusts as your child grows, keeping the side and head support in the proper position. It also transitions into a no-back booster. Your child will love the comfortable padding around the head and body. Elastic cup holders are perfect for a juice box or a quick snack. With Backrest : Height recommendation : 112 to 145 cm (44 to 57 in.) and tops of the child's ears are at or below the top of the booster seat headrest . At least 4 years old Without Backrest : Weight recommendation : 112 to 145 cm (44 to 57 in.) and tops of the child's ears are at or below the top of the vehicle seat headrest . At least 4 years old

**Safety Testing:**

At Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard.

- **Side Impact Tested**: Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards.
- Designed and tested for structural integrity at energy levels approximately **2X the federal crash test standard**.
- **FMVSS 213**: Federal Motor Vehicle Safety Standards for Child Restraint Systems
- **FMVSS 302**: Federal Motor Vehicle Safety Standards for Flammability of Interior Materials
- **CMVSS 302**: Canada Motor Vehicle Safety Standard
- **CMVSS 213**: Canada Motor Vehicle Safety Standard
- **Evenflo Temperature Testing**: All current Evenflo car seats are tested for product integrity at both high and low temperatures.

16

49.    Walmart's Big kid page:

## About This Item

**We aim to show you accurate product information.** Manufacturers, suppliers and others provide what you see here, and we have not verified it. See our disclaimer

The Evenflo Big Kid Sport Booster Car Seat gets your child excited about sitting in a booster seat! With 6 height positions, the back adjusts as your child grows, keeping the side and head support in the proper position. It also transitions into a no-back booster. Your child will love the comfortable padding around the head and body. The dual cup holders will keep drinks and snacks close. **Evenflo Big Kid Sport High Back Booster Seat, Peony Playground:**

- 2 Seats in 1 ? removable back for easy transition to a no-back booster
- Easy one-hand, 6-position height adjustment to accommodate growing children longer
- 2 cup holders for drinks
- Machine-washable pad keeps seat looking clean
- Side Impact Tested: meets or exceeds all applicable Federal Safety Standards and Evenflo's Side Impact Test Standard
- Designed and tested for structural integrity at energy levels; approximately 2X the federal crash test standard
- Energy absorbing foam liner provides added safety and comfort
- For use as high back booster (with backrest)
- Weight: 40 - 100 lbs
- Height: 44 - 57"
- Age: child is at least 4 years old or older
- Child's ears are below top of child restraint headrest
- For Use as No Back Booster (without backrest)
- Weight: 40 - 100 lbs
- Height: 44 - 57"
- Age: child is at least 4 years old or older

**Questions about product recalls?**
Items that are a part of a recall are removed from the Walmart.com site, and are no longer available for purchase. These items include Walmart.com items only, not those of Marketplace sellers. Customers who have purchased a recalled item will be notified by email or by letter sent to the address given at the time of purchase. For complete recall information, go to Walmart Recalls.

50.    The "side impact tested" label appears on the Big Kid's packaging:



51.     Evenflo also stiches "side impact tested" labels into the Big Kid seats themselves:





52. Customer reviews for several Big Kid models confirm that parents rely on Evenflo's misrepresentations.



c. **Ignoring scientific consensus and its own engineers' recommendations, Evenflo encouraged parents to use Big Kid booster seats for children below 40 pounds.**

53. Contrary to the recommendations of the American Academy of Pediatrics discussed above, Evenflo marketed, and until recently continued to market, Big Kid booster seats to children who weigh as little as 30 pounds.

54. Evenflo failed to revise its website to state that the minimum weight for the Big Kid booster seat is 40 pounds until after the nonprofit organization *ProPublica* published a journalistic exposé on the Big Kid on February 6, 2020. According to Evenflo's general counsel, in May 2016, Evenflo changed some of its U.S. booster seats to a 40-pound minimum so it could sell those products in Canada, which precludes the sale of boosters to children under 40 pounds.

19

Evenflo otherwise maintained its minimum weight recommendation of 30 pounds purportedly to "provide options for parents whose children were too tall" for harnessed seats.

55.     Thus, until early 2020, the 30-pound standard generally appeared in Evenflo's sales materials, product descriptions, and product manuals for the Big Kid booster seat in the United States.  For example, a screenshot of Evenflo's product page for the "Big Kid Booster Car Seat" from July 19, 2019 lists a minimum weight of 30 pounds:[8]



---

[8] This product listing was retrieved from the Archive.org, a digital archive, and can be found at the following URL: http://www.evenflo.com/car-seats/big-kid/us_bigkid.html?dwvar_us__bigkid_fashion=31912230&cgid=car-seat-booster.



56.     On the same webpage, Evenflo continued to falsely advertise that the Big Kid exceeded federal safety standards for side-impact testing:



57.     After *ProPublica*'s reporting, many of its Big Kid booster seats continued to be advertised as appropriate for children weighing as little as 30 pounds.  For example, as of

February 9, 2020, Kohl's webpage continued to show that the "Big Kid High Back Booster Car Seat" was as appropriate for children weighing between 30 and 110 pounds:



58.     According to *ProPublica*, Big Kid booster seats ordered from Evenflo's website as recently as January 2020 came with boxes that failed to specify an age for use, and had labels stating that the product was safe for children weighing as little as 30 pounds.

59.     Despite scientific consensus to the contrary, Evenflo maintained the 30-pound minimum to sell more booster seats.  In marketing the Big Kid, Evenflo knew (and took advantage of the fact) that children often complain to their parents about using harnessed seats,

which those children view as babyish.  Evenflo also knew that the Big Kid was cheaper, less complicated to use, and easier to move, than a harnessed seat.

60.     When introducing the Big Kid booster seat in the early 2000s, Evenflo marketed it as safe for children as young as one so long as they weighed 30 pounds—without a minimum height.  This was an attempt to take sales away from Graco, whose competing booster seat was labeled as safe for children who weighed at least 30 pounds and were at least three years old.

61.     Evenflo's engineers have conceded that neither one-year-olds nor two-year-olds should be placed in Big Kid booster seats, consistent with scientific consensus.  In a 2016 deposition, Evenflo project engineer Joshua Donay, who worked on the Big Kid, testified that he would "not put a one-year-old in any belt-positioning booster, Big Kid, Graco, you name it," and "would keep them in an infant seat."  Eric Dahle, Evenflo's top booster seat engineer, also testified that two-year-olds should not be placed in Big Kid booster seats.

62.     Evenflo did not increase the minimum age on the Big Kid to three until 2007, however.  At that time, Evenflo also added a minimum 38-inch height requirement.  Only then did Evenflo warn consumers that failing to follow these instructions could "result in your child striking the vehicle's interior during a sudden stop or crash, potentially resulting in serious injury or death."

63.     Nonetheless, Evenflo failed to notify past purchasers or to undertake any other remedial action, thus exposing millions of children under three years-old and/or 38 inches in height to risk of serious injury or death.

64.     Despite the AAP's safety announcement in 2011—that parents should keep their children in rear-facing child safety seats for as long as possible before, and that switching children to booster seats at 40 pounds was no longer ideal—Evenflo continued to fight to maintain the 30-pound weight threshold.

65.     NHTSA updated its guidelines soon after the AAP's announcement to reflect its recommendations:[9]



66.     As reported by *ProPublica*, in an early 2012 presentation to colleagues, Dahle stated that three and four-year-old children are at an "increased risk of injury" in booster seats because they often do not sit properly in booster seats.  According to Dahle, "[k]eeping the seat at 30 lbs encourages parents to transition them earlier because they can, and the booster is a less expensive option."  He further stated that Evenflo should discourage early transitions to booster seats, so parents could keep their children in harnessed seats longer: "[a harnessed seat] is the

[9]  *See* NHTSA, "NHTSA Releases New Child Seat Guidelines" (March 21, 2011), available at https://one.nhtsa.gov/portal/site/NHTSA/menuitem.554fad9f184c9fb0cc7ee21056b67789/?vgne xtoid=47818846139ce210VgnVCM10000066ca7898RCRD&vgnextchannel=c9f64dc9e66d5210 VgnVCM100000656b7798RCRD&vgnextfmt=default.

better option.  We should encourage that behavior by modifying the weight rating to 40 lbs.  To overcome the misuse, we should follow the NHTSA Guidelines and increase the age rating to 4 yrs old also."

67.    In addition, Dahle sent a 2010 NHTSA report on booster seat effectiveness to his colleagues.[10]  He specifically noted the following findings:  (a) three- and four-year-olds had a reduced risk of injury in crashes when they were using harnessed seats rather than boosters; (b) early graduation to boosters may "present safety risks"; (c) children should remain in harnessed seats until they are four or weigh 40 pounds; and (d) harnessed seats may offer more side support and "better containment" for smaller children in crashes.

68.    Although Evenflo raised the minimum age for the Big Kid to four-years-old, Dahle's weight recommendations were "vetoed" days later by Evenflo's senior marketing director McKay Featherstone.  When another employee suggested increasing the weight limit later in 2010, Featherstone, who had been promoted to vice president of marketing and product development, pushed back in an email:

> Gregg, why are we even talking about this?  It has always been this way in Canada so I don't understand why it is now a big problem that requires a $30k investment or us to change product.  ***I have looked at 40 lbs for the US numerous times and will not approve this.***  [Emphasis added.]

69.    Once Evenflo increased the Big Kid's minimum age to four-years-old, it continued to sell the old model with manuals from 2008 stating that the product was safe for three-year-olds.

70.    Jon Conaway, Evenflo's senior product manager for car seats, testified in a deposition in 2019 that did not know about any internal debate over weight limits.  He also denied knowing about NHTSA's updated 2011 recommendations and said that he first learned of them when they were read to him by plaintiff's counsel during the deposition.

---

[10] A copy of NHTSA's July 2010 report, "Booster Seat Effectiveness Estimates Based on CDS and State Data," can be found at https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338.

**d. If Evenflo had disclosed the results of its side-impact testing, no parent would have purchased a Big Kid booster seat.**

71.     If Evenflo had disclosed the results of its side-impact testing to the public, no parent would have purchased a Big Kid booster seat.  As Evenflo's engineers have admitted, these tests show that Big Kid booster seats place many children at risk of serious injury or death.

72.     Disregarding both the AAP's and NHTSA's recommendations regarding child safety, Evenflo has spent a dozen years misinforming parents that its Big Kid booster seats are "side-impact tested," in order to maximize profits.  And, Evenflo has objected to revising the weight limit for these seats to 40 pounds.

73.     Although Evenflo touts that safety is its "number one priority for our customers," the company has not conducted scientific testing to determine the height or weight, if any, at which it is safe for a child to ride in a Big Kid booster seat.

74.     Millions of parents and guardians bought Big Kid booster seats, in reliance on Evenflo's misrepresentations and omissions, mistakenly believing that their children will be protected during side-impact crashes.  As a result, millions of children ride in Big Kid booster seats for which they are too young or too small at a risk of facing substantial injuries.

75.     Purchasers of Big Kid booster seats did not get the benefit of the bargain.  They paid for a booster seat under the mistaken belief that the product was "side-impact tested" and safe for children as small as 40 or even 30 pounds in the event of a side-impact collision.  Instead, the booster seat they got lacked these qualities and posed a risk of significant injury or death for the occupants for whom it was marketed to be safe.

76.     At a minimum, Evenflo should be forced to recall all Big Kid booster seats still in use and refund the purchase price.

## V.    Tolling of the Statute of Limitations

### a.    The Statutes of Limitations are Tolled Under the Discovery Rule

77.    Plaintiffs and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that Evenflo's Big Kid booster seat models are unsafe in side-impact crash tests within any applicable statute of limitations.

78.    Plaintiffs and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Evenflo's Big Kid booster seat models are unsafe in side-impact crash tests, or that Evenflo's marketing of these seats as "side-impact tested" was false and misleading.

79.    The information revealing Big Kid booster seat models to be unsafe was within Evenflo's sole possession.  These facts were not known to the public until *ProPublica* published its exposé on February 6, 2020.

80.    The information described in this Complaint that came from depositions in other litigation had been sealed by court order and inaccessible to the public.  As *ProPublica* noted, the public has had little access to information about booster seat manufacturers' safety standards and results, in part because these materials are part of a sealed record in personal injury litigation.

81.    Although Evenflo was required to report to the Consumer Product Safety Commission information about lawsuits it settled over the safety of the Big Kid booster seat,[11] on information and belief, Evenflo failed to meet these statutory obligations.  Thus, Evenflo continued to conceal material information about the safety of the product from federal regulators and the public.

---

[11] *See* 15 U.S.C. § 2084(a) ("If a particular model of a consumer product is the subject of at least 3 civil actions that have been filed in Federal or State court for death or grievous bodily injury which in each of the 24-month periods defined in subsection (b) result in either a final settlement involving the manufacturer or a court judgment in favor of the plaintiff, the manufacturer of such product shall, in accordance with subsection (c), report to the Commission each such civil action within 30 days after the final settlement or court judgment in the third of such civil actions, and, within 30 days after any subsequent settlement or judgment in that 24-month period, any other such action.").

82.     Plaintiff and Class members could not have reasonably discovered Evenflo's deception concerning the safety of its Big Kid booster seats until the *ProPublica* publication.

83.     For these reasons, all applicable statutes of limitation have been tolled by the discovery rule.

> **b.  The Statutes of Limitations are Tolled by Evenflo's Fraudulent Concealment**

84.     Evenflo's fraudulent concealment throughout the period relevant to this action tolls any applicable statute of limitations.

85.     Evenflo affirmatively misrepresented that Big Kid booster seats were "side-impact tested," while concealing that, according to its own testing, children placed in Big Kid booster seats are at risk of serious injury or death in side-impact crashes.

86.     Evenflo still conceals the dangers of the Big Kid booster by continuing to market it falsely as "SIDE IMPACT TESTED" without revealing that its own tests showed that children seated in the Big Kid were in grave danger in side impact accidents.

87.     Although Evenflo was required to report to the Consumer Product Safety Commission that the Big Kid booster seat created an unreasonable risk of serious injury or death to children under 40 pounds[12] on information and belief, Evenflo failed to meet these statutory obligations.  Thus, Evenflo continued to conceal material information about the safety of the product from federal regulators and the public.

88.     Statements by Evenflo's General Counsel, Amy Blankenship in response to *ProPublica* demonstrate that Evenflo fraudulently concealed the dangers of the Big Kid booster seat.  Blankenship, who is quoted extensively in the ProPublica article, continued to tout the safety record of the company and the Big Kid booster.  According to the article, Blankenship wrote that Evenflo has been a pioneer in side-impact testing of boosters and other child car seats, and that it provides safe, effective and affordable products, including the Big Kid.  The article

---

[12] *See* 15 U.S.C. § 2064(b) ("Every manufacturer of a consumer product … distributed in commerce … who obtains information which reasonably supports the conclusion that such product creates an unreasonable risk of serious injury or death, shall immediately inform the Commission of … such risk, unless such manufacturer … has actual knowledge that the Commission has been adequately informed of … such risk.").

further cites Blankenship as writing that Evenflo's Big Kid has always complied with federal regulations and rules written by the National Highway Traffic Safety Administration allow the sale of boosters for children who weigh as little as 30 pounds. Blankenship asserted that Evenflo does not believe its recommendations are inconsistent with those of the AAP or NHTSA.

89.     Blankenship continued: "Unquestionably, our company records on Big Kid alone are anecdotal proof of the improved level of safety. … No child restraint or booster seat can ensure that a child will not be injured in a car crash, especially a severe one; just like no vehicle manufacturer can ensure that all occupants will escape injury in every crash." She accused *ProPublica* of seeking "to condemn an entire category of car seats successfully used by millions of consumers and which helped save thousands of lives in a myriad of crash scenarios."

90.     Blankenship further criticized *ProPublica* for trying to "poke holes" in Evenflo's testing methods, writing that *ProPublica*'s questions put the company in the position "of being damned if you do and damned if you don't." With respect to specific personal injury cases, Blankenship blamed the children's injuries on bad driving, not the Big Kid: "In the lawsuits you mention, it is undisputed that significant driver error was the primary causative factor of the children's injuries."

91.     Thus Evenflo, through public statements by its General Counsel, continues to conceal that Big Kid booster seats place young children at risk of serious injury or death in side-impact crashes.

### c.     The Statute of Limitations are Tolled by Estoppel

92.     Evenflo was under a continuous duty to disclose to Plaintiffs and the other Class members the risks of placing children in its Big Kid booster seats.

93.     Evenflo knowingly, affirmatively, and actively concealed or recklessly disregarded the true risks of placing children in these seats, and meanwhile affirmatively misrepresented them as "side-impact tested."

94.     Accordingly, Evenflo is estopped from relying on any statutes of limitations in defense of this action.

## VI.    Class Allegations

95.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant

to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of

the following classes (collectively, the "Classes"):

> **The Illinois Class**: All persons in the State of Illinois who purchased an Evenflo Big Kid booster seat between 2008 and the present.
>
> **The New Jersey Class**:  All persons in the State of New Jersey who purchased an Evenflo Big Kid booster seat between 2008 and the present.
>
> **The New York Class**:  All persons in the State of New York who purchased an Evenflo Big Kid booster seat between 2008 and the present.
>
> Excluded from each of the Classes are all persons who sustained personal injuries as a result of an accident involving a Big Kid booster seat.

96.    **Numerosity:**  While Plaintiffs do not know the exact number of the members of

the Classes, Plaintiffs believe there are at least thousands of members in each Class.

97.    **Typicality:**  Plaintiffs' claims are typical of the claims of the members of the

Classes they seek to represent.  The claims of Plaintiffs and all members of the Classes arise

from the same wrongful conduct.  As a result of Evenflo's failure to disclose the safety risks

associated with using Big Kid booster seat models, as well as its false and misleading claims that

these models were "side-impact tested," Plaintiffs and members of the Classes were misled into

purchasing these seats which they otherwise would not have purchased.

98.    **Adequacy:**  Plaintiffs will fairly and adequately represent and protect the interests

of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4).  Plaintiffs are

adequate representatives of the Classes, because they have no interests that are adverse to the

interests of the members of the Classes.  Plaintiffs are committed to the vigorous prosecution of

this action, and they have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

99.     **Superiority:**  A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

a.   The expense and burden of individual litigation make it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

b.   If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

c.   Absent a class action, Evenflo likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

100.    **Common Questions Predominate:**  Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).  The common questions of fact include, but are not limited to, the following:

a.   Whether the Big Kid booster seats sold to members of the Classes are unsafe in side-impact crashes;

b.   Whether Evenflo knew, or had reason to know, that its Big Kid booster seats were unsafe in side-impact crashes;

c.   Whether Evenflo acted to conceal from consumers evidence, including proprietary test data, demonstrating that its Big Kid booster seats are unsafe in side-impact crashes;

d.   Whether Evenflo affirmatively misrepresented the safety of its Big Kid booster seats as "side impact tested";

e.  Whether Evenflo's failure to disclose the safety risks posed by use of its Big Kid booster seat in its product packaging and labeling (or elsewhere) was unlawful, unfair, deceptive, fraudulent, or unconscionable;

f.  Whether Evenflo is liable to Plaintiffs and Class members for damages under state consumer protection statutes;

g.  Whether an injunction should be issued requiring Evenflo to: (i) recall all Big Kid booster seats still in use; (ii) cease selling Big Kid booster seats; and/or (iii) add labeling to all future Big Kid booster seats warning consumers of the dangers associated with their use; and

h.  Whether Plaintiffs and members of the Classes are entitled to attorneys' fees, prejudgment interest, and costs of suit, and if so, in what amount.

## COUNT I

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILL. COMP. STAT. §§ 505/1, *ET SEQ.* & 510/2
#### (On Behalf of Illinois Plaintiffs and the Illinois Class)

101.  Plaintiffs Georgette and Andrew Gladstone ("Illinois Plaintiffs") incorporate by reference all allegations of the preceding paragraphs with the same force and effect as though fully set forth herein.

102.  Illinois Plaintiffs bring this claim for relief on behalf of themselves and the members of the Illinois Class pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505/1, *et seq.* & 510/2 ("Illinois CFA").

103.  Illinois Plaintiffs, Evenflo, and the members of the Illinois Class are "persons" within the meaning of 815 Ill. Comp. Stat. §§ 505/1(c) and 510/1(5).  Illinois Plaintiffs and the members of the Illinois Class are "consumers" within the meaning of 815 Ill. Comp. Stat. § 505/1(e).

104. The Illinois CFA makes unlawful "unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. § 505/2. The Illinois CFA further makes unlawful deceptive trade practices undertaken in the course of business. 815 Ill. Comp. Stat. § 510/2.

105. Evenflo, in the course of its business, violated the Illinois CFA by failing to disclose and actively concealing the safety risks and crashworthiness posed by Big Kid booster seats. In marketing, offering for sale, and selling Big Kid booster seats, Evenflo engaged in one or more of the following unfair or deceptive acts or practices prohibited by 815 Ill. Comp. Stat. §§ 505/2 and 510/2, including, but not limited to:

      a. Representing that Big Kid booster seats have characteristics or benefits that they do not have;

      b. Representing that Big Kid booster seats are of a particular standard and quality when they are not;

      c. Advertising Big Kid booster seats with the intent not to sell them as advertised;

      d. Engaging in other conduct which created a likelihood of confusion or of misunderstanding as to the safety risks and crashworthiness of Big Kid booster seats; and/or

      e. Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and the sale of Big Kid booster seats, whether or not any person has in fact been misled, deceived or damaged thereby.

106.    Evenflo knew of the safety risks and crashworthiness of Big Kid booster seats and failed to disclose and actively concealed the dangers and risks posed by them.

107.    By (1) failing to disclose and by actively concealing the safety risks and crashworthiness of Big Kid booster seats, (2) marketing Big Kid booster seats as safe, reliable, and of high quality, and (3) presenting itself as a reputable manufacturer that places safety as its "number one priority for our customers," Evenflo engaged in unfair or deceptive business practices in violation of the Illinois CFA. Evenflo deliberately and willfully failed to disclose and actively concealed the information about the safety risks and crashworthiness of Big Kid booster seats in order to ensure that consumers would purchase Big Kid booster seats.

108.    Evenflo's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Illinois Plaintiffs and members of the Illinois Class, about the safety risks and crashworthiness of Big Kid booster seats and the quality of Evenflo as a brand.

109.    Evenflo intentionally and knowingly misrepresented material facts regarding the safety risks and crashworthiness of Big Kid booster seats with an intent to mislead Illinois Plaintiffs and members of the Illinois Class.

110.    Evenflo knew or should have known that its conduct violated the Illinois CFA.

111.    As alleged above, Evenflo made material statements about the safety risks and crashworthiness of Big Kid booster seats them that were either false or misleading.

112.    To protect profits and avoid remediation costs and a public relations nightmare, Evenflo concealed the safety risks and crashworthiness of Big Kid booster seats and their tragic consequences and allowed unsuspecting consumers to continue to purchase Big Kid booster seats knowing they posed significant safety risks to occupants.

113.    Evenflo owed Illinois Plaintiffs and members of the Illinois Class a duty to disclose the safety risks and crashworthiness of Big Kid booster seats because it:

    a.   Possessed exclusive knowledge of the dangers and risks posed by Big Kid booster seats;

    b.   Intentionally concealed those dangers and risks from Illinois Plaintiffs and the Illinois Class; and/or

    c.   Made incomplete representations about the safety and crashworthiness of Big Kid booster seats, while purposefully withholding material facts from Illinois Plaintiffs and the Illinois Class that contradicted these representations.

114.    Because Evenflo fraudulently concealed the safety risks and crashworthiness of Big Kid booster seats, disclosure of the safety risks and crashworthiness of Big Kid booster seats would have caused a reasonable consumer not to purchase a Big Kid booster seat.

115.    Evenflo's failure to disclose and active concealment of the safety risks and crashworthiness of Big Kid booster seats were material to Illinois Plaintiffs and the members of the Illinois Class.

116.    Illinois Plaintiffs and the members of the Illinois Class suffered ascertainable loss caused by Evenflo's misrepresentations and failure to disclose material information.  Had they been aware of the safety risks, crashworthiness of Big Kid booster seats, and Evenflo's disregard for safety, Illinois Plaintiffs and the members of the Illinois Class would not have purchased Big Kid booster seats.  Illinois Plaintiffs and the members of the Illinois Class had no way of discerning that Evenflo's representations were false and misleading, or otherwise learning the facts that Evenflo had concealed or failed to disclose.

117.    Illinois Plaintiffs and the members of the Illinois Class did not receive the benefit of their bargain as a result of Evenflo's misconduct.

118.    Evenflo's violations present a continuing risk to Illinois Plaintiffs and the members of the Illinois Class, as well as to the general public.

119.    Evenflo's unlawful acts and practices complained of herein affect the public interest.

120. As a direct and proximate result of Evenflo's violations of the Illinois CFA, Illinois Plaintiffs and the members of the Illinois Class have suffered injury-in-fact and/or actual damage.

121. Pursuant to 815 Ill. Comp. Stat. §§505/10a(a) and 510/3, Illinois Plaintiffs and the Illinois Class seek an order awarding damages, punitive damages, and any other just and proper relief available under the Illinois CFA.

<u>**COUNT II**</u>

**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**

**N.J. STAT. ANN. § 56:8-1, ET SEQ.**

**(By New Jersey Plaintiff and the New Jersey Class)**

122. Plaintiff Karen Sanchez ("New Jersey Plaintiff") incorporates by reference all allegations of the preceding paragraphs with the same force and effect as though fully set forth herein.

123. New Jersey Plaintiff brings this claim for relief on behalf of herself and the members of the New Jersey Class pursuant to the New Jersey Consumer Fraud Act, N.J. Stat. Ann § 56:8-1, *et seq.* ("New Jersey CFA").

124. New Jersey Plaintiff, members of the New Jersey Class, and Evenflo are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

125. Evenflo was and is engaged in "sales" of "merchandise" within the meaning of § 56:8-1(c)-(d).

126. The New Jersey CFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."  N.J. Stat. Ann. § 56:8-2.

127.     Evenflo, in the course of its business, violated the New Jersey CFA by failing to disclose and actively concealing the safety risks and crashworthiness of the Big Kid booster seats.  In marketing, offering for sale, and selling Big Kid booster seats, Evenflo engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New Jersey CFA:

        a.   Representing that Big Kid booster seats have characteristics or benefits that they do not have;

        b.   Representing that Big Kid booster seats are of a particular standard and quality when they are not; and/or

        c.   Advertising Big Kid booster seats with the intent not to sell them as advertised.

128.     Evenflo knew of the safety risks and crashworthiness of Big Kid booster seats and failed to disclose and actively concealed those dangers and risks.

129.     By (1) failing to disclose and by actively concealing the safety risks and crashworthiness of Big Kid booster seats, (2) marketing them as safe, reliable, and of high quality, and (3) presenting itself as reputable manufacturer that places safety as its "number one priority for our customers," Evenflo engaged in unfair or deceptive business practices in violation of the New Jersey CFA.  Evenflo deliberately and willfully failed to disclose and actively concealed the information about the safety risks and crashworthiness of Big Kid booster seats in order to ensure that consumers would purchase Big Kid booster seats.

130.     Evenflo's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including New Jersey Plaintiff and members of the New Jersey, about the safety risks and crashworthiness of Big Kid booster seats and the quality of Evenflo as a brand.

131.    Evenflo intentionally and knowingly misrepresented material facts regarding the safety risks and crashworthiness of Big Kid booster seats with an intent to mislead New Jersey Plaintiff and members of the New Jersey Class.

132.    Evenflo knew or should have known that its conduct violated the New Jersey CFA.

133.    As alleged above, Evenflo made material statements about the safety risks and crashworthiness of Big Kid booster seats them that were either false or misleading.

134.    To protect profits and avoid remediation costs and a public relations nightmare, Evenflo concealed the safety risks and crashworthiness of Big Kid booster seats and their tragic consequences and allowed unsuspecting consumers to continue to purchase Big Kid booster seats knowing they posed significant safety risks to occupants.

135.    Evenflo owed New Jersey Plaintiff and members of the New Jersey Class a duty to disclose the safety risks and crashworthiness of Big Kid booster seats because it:

      a.    Possessed exclusive knowledge of the dangers and risks posed by Big Kid booster seats;

      b.    Intentionally concealed those dangers and risks from New Jersey Plaintiff and the New Jersey Class; and/or

      c.    Made incomplete representations about the safety and crashworthiness of Big Kid booster seats, while purposefully withholding material facts from New Jersey Plaintiff and the New Jersey Class that contradicted these representations.

136.    Because Evenflo fraudulently concealed the safety risks and crashworthiness of Big Kid booster seats, disclosure of the safety risks and crashworthiness of Big Kid booster seats would have caused a reasonable consumer not to purchase a Big Kid booster seat.

137.    Evenflo's failure to disclose and active concealment of the safety risks and crashworthiness of Big Kid booster seats were material to New Jersey Plaintiff and the members of the New Jersey Class.

138.     New Jersey Plaintiff and the members of the New Jersey Class suffered ascertainable loss caused by Evenflo's misrepresentations and failure to disclose material information.  Had they been aware of the safety risks, crashworthiness of Big Kid booster seats, and Evenflo's disregard for safety, New Jersey Plaintiff and the members of the New Jersey Class would not have purchased Big Kid booster seats.  New Jersey Plaintiff and the members of the New Jersey Class had no way of discerning that Evenflo's representations were false and misleading, or otherwise learning the facts that Evenflo had concealed or failed to disclose.

139.     New Jersey Plaintiff and the members of the New Jersey Class did not receive the benefit of their bargain as a result of Evenflo's misconduct.

140.     Evenflo's violations present a continuing risk to New Jersey Plaintiff and the members of the New Jersey Class, as well as to the general public.

141.     Evenflo's unlawful acts and practices complained of herein affect the public interest.

142.     As a direct and proximate result of Evenflo's violations of the New Jersey CFA, New Jersey Plaintiff and the members of the New Jersey Class have suffered injury-in-fact and/or actual damage.

143.     Pursuant to N.J. Stat. Ann. § 56:8-19, New Jersey Plaintiff and the members of the New Jersey Class seek an order awarding damages, treble damages, and any other just and proper relief available under the New Jersey CFA.

144.     Pursuant to N.J. Stat. Ann. § 56:8-19, New Jersey Plaintiff and the members of the New Jersey Class seek an order awarding damages, treble damages, and any other just and proper relief available under the New Jersey CFA.

## COUNT III

### DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF NEW YORK LAW

### N.Y. GEN. BUS. LAW § 349

**(By New York Plaintiff and the New York Class)**

145.     Plaintiff Teresa Muga ("New York Plaintiff") incorporates by reference all allegations of the preceding paragraphs with the same force and effect as though fully set forth herein.

146.     New York Plaintiff brings this claim for relief on behalf of herself and the members of the New York Class pursuant to New York General Business Law § 349 ("New York GBL").

147.     New York Plaintiff and members of the New York Class are "persons" within the meaning of the New York GBL § 394(h). Evenflo is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

148.     The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

149.     Evenflo, in the course of its business, violated the New York GBL by failing to disclose and actively concealing the safety risks and crashworthiness of the Big Kid booster seats.  In marketing, offering for sale, and selling Big Kid booster seats, Evenflo engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New York GBL:

      a.   Representing that Big Kid booster seats have characteristics or benefits that they do not have;

      b.   Representing that Big Kid booster seats are of a particular standard and quality when they are not; and/or

      c.   Advertising Big Kid booster seats with the intent not to sell them as advertised.

150.     Evenflo knew of the safety risks and crashworthiness of Big Kid booster seats and failed to disclose and actively concealed those dangers and risks.

151.     By (1) failing to disclose and by actively concealing the safety risks and crashworthiness of Big Kid booster seats, (2) marketing them as safe, reliable, and of high quality, and (3) presenting itself as reputable manufacturer that places safety as its "number one priority for our customers," Evenflo engaged in unfair or deceptive business practices in violation of the New York GBL.  Evenflo deliberately and willfully failed to disclose and actively concealed the information about the safety risks and crashworthiness of Big Kid booster seats in order to ensure that consumers would purchase Big Kid booster seats.

152.     Evenflo's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including New York Plaintiff and members of the New York, about the safety risks and crashworthiness of Big Kid booster seats and the quality of Evenflo as a brand.

153.     Evenflo intentionally and knowingly misrepresented material facts regarding the safety risks and crashworthiness of Big Kid booster seats with an intent to mislead New York Plaintiff and members of the New York Class.

154.     Evenflo knew or should have known that its conduct violated the New York GBL.

155.     As alleged above, Evenflo made material statements about the safety risks and crashworthiness of Big Kid booster seats them that were either false or misleading.

156.     To protect profits and avoid remediation costs and a public relations nightmare, Evenflo concealed the safety risks and crashworthiness of Big Kid booster seats and their tragic consequences and allowed unsuspecting consumers to continue to purchase Big Kid booster seats knowing they posed significant safety risks to occupants.

157.     Evenflo owed New York Plaintiff and members of the New York Class a duty to disclose the safety risks and crashworthiness of Big Kid booster seats because it:

  a. Possessed exclusive knowledge of the dangers and risks posed by Big Kid booster seats;

  b. Intentionally concealed those dangers and risks from New York Plaintiff and the New York Class; and/or

  c. Made incomplete representations about the safety and crashworthiness of Big Kid booster seats, while purposefully withholding material facts from New York Plaintiff and the New York Class that contradicted these representations.

158. Because Evenflo fraudulently concealed the safety risks and crashworthiness of Big Kid booster seats, disclosure of the safety risks and crashworthiness of Big Kid booster seats would have caused a reasonable consumer not to purchase a Big Kid booster seat.

159. Evenflo's failure to disclose and active concealment of the safety risks and crashworthiness of Big Kid booster seats were material to New York Plaintiff and the members of the New York Class.

160. New York Plaintiff and the members of the New York Class suffered ascertainable loss caused by Evenflo's misrepresentations and failure to disclose material information. Had they been aware of the safety risks, crashworthiness of Big Kid booster seats, and Evenflo's disregard for safety, New York Plaintiff and the members of the New York Class would not have purchased Big Kid booster seats. New York Plaintiff and the members of the New York Class had no way of discerning that Evenflo's representations were false and misleading, or otherwise learning the facts that Evenflo had concealed or failed to disclose.

161. New York Plaintiff and the members of the New York Class did not receive the benefit of their bargain as a result of Evenflo's misconduct.

162. As a direct and proximate result of Evenflo's violations of the New York GBL, New York Plaintiff and the members of the New York Class have suffered injury-in-fact and/or actual damage.

163.     Pursuant to N.Y. Gen. Bus. Law § 349, New York Plaintiff and the members of the New York Class seek an order awarding damages, treble damages, and any other just and proper relief available under the New York GBL.

## COUNT IV

### FALSE ADVERTISING IN VIOLATION OF NEW YORK LAW

### N.Y. GEN. BUS. LAW § 350

### (By New York Plaintiff and the New York Class)

164.     New York Plaintiff incorporates by reference all allegations of the preceding paragraphs with the same force and effect as though fully set forth herein.

165.     New York Plaintiff brings this claim for relief on behalf of herself and the members of the New York Class pursuant to New York General Business Law § 350 ("New York FAA").

166.     Evenflo is engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350.

167.     The New York FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law § 350.  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity…."  N.Y. Gen. Bus. Law § 350-a.

168.     Evenflo caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known by Evenflo, to be untrue and misleading to consumers, including New York Plaintiff and the other members of the New York Class.

169.     As detailed above, Evenflo marketed Big Kid booster seats as safe, including for children under 40 pounds, and side-impact tested.  Evenflo's advertisements and marketing

materials affirmatively misrepresented the safety risks and crashworthiness of Big Kid booster seats.

170.    Evenflo violated the NY FAA by:

a.    Representing that Big Kid Booster Seats had characteristics, uses, benefits, and qualities which they do not have;

b.    Representing that the Big Kid Booster Seats are of a particular standard, quality and grade when they are not;

c.    Advertising Big Kid Booster booster seats with the intent not to sell them as advertised;

d.    Engaging in other conduct creating a likelihood of confusion or of misunderstanding; and

e.    Employing concealment, suppression, or omission of material facts in connection with the advertisement and sale of Big Kid booster seats.

171.    Evenflo knew or should have known that its conduct violated the New York FAA.

172.    New York Plaintiff and members of the New York Class suffered ascertainable loss and actual damages as a direct and proximate result of Evenflo's misrepresentations, deceptions, and their concealment of and failure to disclose material information.

173.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Evenflo's business.  Evenflo's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of New York and nationwide.

174.    Pursuant to the New York FAA, New York Plaintiff and members of the New York Class seek injunctive relief, as well as monetary relief against Evenflo measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages of $500 each for member of the New York Class.  Because Evenflo's conduct was committed willingly and knowingly, New York Plaintiff and members of the New York Class are entitled to recover three times actual damages, up to $10,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Classes, respectfully request that the Court enter judgment in their favor and against Evenflo, as follows:

    a.  A determination that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure Rule 23, and for an order certifying this case as a class action and appointing Plaintiffs as representatives of the Classes identified above;

    b.  A declaration that Evenflo's failure to disclose the dangers associated with using its Big Kid model booster seats was unfair, deceptive, fraudulent, wrongful, and unlawful;

    c.  Restitution and restitutionary disgorgement for all Big Kid model booster seats purchased by Plaintiff and the Classes, in an amount to be determined at trial;

    d.  Actual, statutory, and punitive damages in an amount to be determined;

    e.  A permanent injunction requiring Evenflo to: (i) recall all Big Kid booster seats still in use; (ii) cease selling Big Kid booster seats; and (iii) add labeling to all future Big Kid booster seats warning consumers of the dangers associated with their use;

    f.  An order awarding Plaintiff and the Classes their attorney's fees, costs, and expenses incurred in connection with this action; and

    g.  Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of

Civil Procedure, of all issues so triable.

Dated: March 25, 2020

/s/ Stuart E. Scott

Stuart E. Scott (0064834)
Kevin C. Hulick (0093921)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
sscott@spanglaw.com
khulick@spanglaw.com
Tel: (216) 696-3232
Fax: (216) 696-3924

Stacey P. Slaughter (*pro hac vice* to be submitted)
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com
Tel: (612) 349-8500
Fax: (612) 339-4181

Michael Ram (*pro hac vice* to be submitted)
Aaron M. Sheanin (*pro hac vice* to be submitted)
Marie Appel (*pro hac vice* to be submitted)
**ROBINS KAPLAN LLP**
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040
mram@robinskaplan.com
asheanin@robinskaplan.com
mappel@robinskaplan.com
Tel: (650) 784-4040
Fax: (650) 784-4041

Glenn Danas (*pro hac vice* to be submitted)
**ROBINS KAPLAN LLP**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
gdanas@robinskaplan.com
Tel: (310) 552-0130
Fax: (310) 229-5800

Samuel J. Strauss (*pro hac vice* to be submitted)
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, WI  53703
sam@turkestrauss.com
Tel: (608) 237-1775
Fax: (608) 509-4423

*Attorneys for Plaintiffs and the Proposed Classes*